**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
LESLIE ARONE,

                             Plaintiff,

      -against-

SAMEDAY TECHNOLOGIES INC. d/b/a
SAMEDAY HEALTH, INC., and MAERLY PAYROLL
PROCESSING LLC,

                            Defendants.
------------------------------------------------------------------------X

Index No.:

COMPLAINT

PLAINTIFF DEMANDS A
TRIAL BY JURY

        Plaintiff, by and through Plaintiff's attorneys, PHILLIPS & ASSOCIATES, Attorneys at

Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

### Nature of the Case

1.     Plaintiff complains pursuant to the New York State Human Rights Law, New York State

    Executive Law §§ 296, *et seq.* ("NYSHRL"), and Article 23-A of the New York Correction

    Law §§ 750 – 755 ("NYCL"). Plaintiff seeks damages to redress the injuries Plaintiff has

    suffered as a result of being discriminated against and having her employment rescinded,

    solely on the basis of her criminal convictions that have no direct relationship to the

    position to be held.

2.     New York Correction Law Article 23-A was enacted to eliminate bias against ex-offenders

    in obtaining employment and remove obstacles to their employment by imposing

    obligations on employers to deal equitably with ex-offenders while protecting society's

    interest in hiring and employing reliable and trustworthy persons.

3.     New York Correction Law § 752 states, in pertinent part, that "[n]o application for any

    license or employment…shall be denied or acted upon adversely by reason of the

    individual's having been previously convicted of one or more criminal offenses… unless:

(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or (2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public."

**Jurisdiction and Venue**

4.    Jurisdiction of this Court is proper under 28 U.S.C. § 1332, in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred within the Southern District of the State of New York.

**Parties**

6.    Plaintiff is a resident of the County of Westchester, State of New York.

7.    At all times material, Defendant SAMEDAY TECHNOLOGIES INC. d/b/a SAMEDAY HEALTH, INC. ("SAMEDAY") is a domestic business corporation organized under the laws of the State of California and operating in the State of New York, with its principal place of business is located at 523 Victoria Avenue, Venice, California 90291.

8.    At all times material, Defendant SAMEDAY owned, operated and controlled a healthcare company which provides a variety of medical services to patients throughout the United States.

9.    At all times material, Defendant MAERLY PAYROLL PROCESSING LLC ("MAERLY") is a limited liability company organized under the laws of the State of

California and operating in the State of New York, with its principal place of business located at 2146 Crespi Lane, Westlake Village, California 91361.

10. At all times material, Defendant MAERLY owned, operated and controlled a nationwide human resources and staffing agency.

11. At all times material, Defendant MAERLY contracts with, and provides employee services to, Defendant SAMEDAY.

12. At all times material, Defendant SAMEDAY employed 4 or more employees.

13. At all times material, Defendant MAERLY employed 4 or more employees.

14. At all times material, Defendant SAMEDAY was an employer defined under the NYSHRL.

15. At all times material, Defendant SAMEDAY was subject to the requirements of the New York Correction Law.

16. At all times material, Defendant MAERLY was an employer defined under the NYSHRL.

17. At all times material, Defendant MAERLY was subject to the requirements of the New York Correction Law.

18. At all times material, Defendant SAMEDAY and Defendant MAERLY were integrated and/or joint employers of Plaintiff as they had an interrelation of operations, common management, and centralized control of labor relations.

19. Defendant SAMEDAY and Defendant MAERLY are at times collectively referred to herein as "Defendants."

20. At all times material, all parties herein worked and/or continue to be employed by Defendants.

## **Material Facts**

21.   On or about May 11, 2014, Plaintiff was convicted of Operating a Motor Vehicle Under the Influence of Drugs or Alcohol in Clifton Park Town Justice.

22.   On or about July 8, 2016, Plaintiff was convicted of Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree in Saratoga County Court.

23.   On or about November 30, 2016, Plaintiff was convicted of Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree and Operating a Motor Vehicle Under the Influence of Drugs or Alcohol in Warren County Circuit Court.

24.   In regards to Plaintiff's rehabilitation and good conduct, Plaintiff has not had any issues with law enforcement since her release from prison in mid-June 2017 ("Release") and maintains a record of good conduct.

25.   Since her Release, Plaintiff has been a productive and law-abiding citizen of New York.

26.   Since her Release, Plaintiff has successfully maintained gainful employment.  Plaintiff's relevant work experience is as follows:

   a.   Westchester Broadway Theatre Gift Shop from July 2017 through September 2018;

   b.   Registered Medical Assistant at Westchester Medical Center in June 2019 through March 2020;

   c.   Registered Medical Assistant for COVID-19 testing at Westchester Medical Center in March 2020 through June 2020;

   d.   Registered Medical Assistant at Westchester Medical Center in June 2020 through December 2021; and

   e.   Registered Medical Assistant at Northwell GoHealth Urgent Care on December 20, 2021.

4

27.  Since her Release, Plaintiff has also received various certifications which supports her good conduct and contributions to society. Plaintiff's certifications are as follows:

   a.  Studied and became a certified Phlebotomy Technician in May 2018;

   b.  Studied and became a Registered Medical Assistant in November 2018; and

   c.  Obtained a Certificate of Good Conduct from New York State Department of Corrections and Community Supervision on May 19, 2022.

28.  In or around May 2022, Plaintiff applied for the position of Certified Medical Assistant with Defendants.

29.  On or about May 25, 2022, Plaintiff had a virtual interview with Sofia Gogina ("Gogina"), Defendant SAMEDAY's Lead Clinical Recruiter.

30.  On or about May 27, 2022, Plaintiff received an application via e-mail from Gogina. Plaintiff promptly filled out the application and returned it to Gogina.

31.  On or about June 3, 2022, Plaintiff received a phone call from Wilbert James ("James"), a manager of Defendant SAMEDAY in White Plains, New York. James subsequently offered Plaintiff the position of Certified Medical Assistant with Defendant SAMEDAY. Plaintiff was ecstatic.

32.  As a full-time Certified Medical Assistant, Plaintiff was expected to earn $25.00 per hour, or approximately $52,000 per year, excluding benefits.

33.  Shortly after offering Plaintiff a position, James e-mailed Plaintiff an application. Plaintiff again promptly filled out the application and provided it to James.

34.  On or about June 6, 2022, Plaintiff e-mailed James to follow up on her application.

35.  On or about June 9, 2022, Plaintiff e-mailed Gogina to inquire the status of her application. Gogina stated, in sum and substance, "onboarding can be a lengthy process. I spoke with

[James] and he said he forwarded your application to HR."

36.    On or about June 12, 2022, Plaintiff e-mailed Defendant SAMEDAY's Human Resources Department to check the status of her application.

37.    On or about June 13, 2022, "Norma" from Defendant SAMEDAY's Human Resources Department e-mailed Plaintiff and informed her that "workflow" was e-mailed to her on June 6, 2022. Plaintiff stated that she did not receive the "workflow," and requested that it be resent.

38.    On or about June 14, 2022, "Norma" contacted Plaintiff asking for a call.

39.    On or about June 15, 2022, Plaintiff called "Norma," who assisted in getting her "workflow" started with ADP. Plaintiff provided information regarding, *inter alia*, her social security card, tax information, direct deposit and a background check.  Plaintiff was unable to provide information for her car insurance and registration as she did not have a driver's license. Plaintiff subsequently signed a waiver to sign off on her driving privileges.

40.    On or about June 20, 2022, Plaintiff contacted James and informed him that her information was completed on ADP and inquired about a work schedule.

41.    On or about June 21, 2022, Plaintiff received an e-mail from "Alex" who indicated that he received all of her paperwork.

42.    On or about June 21, 2022, Plaintiff received a written offer of employment with Defendants.

43.    On or about June 22, 2022, Plaintiff received an e-mail from ADP informing her to go to Concentra Medical Center in Stamford, Connecticut for a drug test and PPD test.

44.    Shortly thereafter, Plaintiff contacted "Norma" and asked if there was a location closer to Plaintiff that she would be able to submit to the tests required by Defendant. Plaintiff

6

explained that she did not have a license and a rideshare serviced would cost her at least $75-$80 round trip. Plaintiff also explained that she had a PPD test done the year prior.

45.   On or about June 23, 2022, "Norma" stated that she would be able to use Plaintiff's PPD results from the year prior, however she would still have to travel to Stamford, Connecticut to submit to a drug test. Plaintiff explained that there was a Lab Corp closer to her home where she would be able to submit to a drug test. Plaintiff's request was denied.

46.   On or about June 29, 2022, Plaintiff submitted to a drug test in Stamford, Connecticut.

47.   On or about July 6, 2022, Plaintiff provided "Norma" with her phlebotomy certificate.

48.   On or about July 7, 2022, Plaintiff spoke with James who stated that Plaintiff was cleared, however did not see Plaintiff's name on the roster to schedule her shifts. James instructed Plaintiff to contact Defendants' Human Resources Department.

49.   That same day, Plaintiff received an e-mail from Defendant MAERLY indicating that her offer of employment was revoked due to her criminal history. Defendant MAERLY indicated that Plaintiff had five business days to dispute their decision. Plaintiff was shocked.

50.   Plaintiff swiftly disputed Defendant MAERLY's decision and provided Defendant MAERLY's Human Resources Department with her Certificate of Good Conduct from the New York State Department of Corrections and Community Supervision. The Certificate of Good Conduct specifically states, *inter alia*, "The certificate **provides relief from forfeitures, disabilities or bars to employment and licensing automatically imposed by New York State law as a result of your conviction…**" (emphasis added).

51.   On or about July 7, 2022, Plaintiff received an e-mail from "Norma" from Defendant SAMEDAY which stated "**You cannot have a felony on your record if you work here.**

7

**You must get that taken off your record before you can be employed with us. If you are able to do so, please let us know and we can run another background check. Sorry for the inconvenience and good luck in your future endeavors."** Plaintiff was devastated.

52.    There is no direct relationship between the crimes of which Plaintiff was convicted and the duties of the Certified Medical Assistant position to which Plaintiff applied.

53.    Before denying and rescinding Plaintiff's offer of employment due to a criminal conviction, Defendants failed to perform the mandatory analysis, pursuant to the New York Correction Law's numerous factors, including: (a) the public policy of New York State to encourage the employment of persons previously convicted of one or more criminal offenses; (b) the specific duties and responsibilities necessarily related to the employment; (c) the bearing, if any, the criminal offense for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities; (d) the time which has elapsed since the occurrence of the criminal offense; (e) the age of the person at the time of occurrence of the criminal offense; (f) the seriousness of the offense; or (g) any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

54.    Instead, Defendants failed to hire Plaintiff based solely on her conviction record without performing the proper fact-specific analysis.  If Defendants had performed the mandated analysis, they would have found that there is no direct relationship between Plaintiff's conviction and the position to which she applied.

55.    Since her Release, Plaintiff has been a productive and law-abiding citizen of New York.

56.    Since her Release, Plaintiff has consistently sought and secured gainful employment.

57.    A factual investigation would have revealed the impressive extent of Plaintiff's rehabilitation, qualification, and good conduct.

58.    Accordingly, Defendants engaged in unlawful and discriminatory conduct when they revoked and denied Plaintiff's employment solely due to his convictions and wholly unrelated to the position sought.

59.    Plaintiff has been unlawfully discriminated against, humiliated, degraded, victimized, embarrassed, and belittled.  As a result, Plaintiff suffers loss of rights, severe emotional distress, loss of income, and earnings.

60.    Defendants' actions and conduct were intentional and intended to harm Plaintiff.

61.    As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

62.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff demands punitive damages.

**First Cause of Action for Discrimination**
**Under the New York State Executive Law**

63.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

64.    New York State Executive Law § 296(15) provides, in pertinent part:

> It shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association… to deny any license or employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of "good moral character" which is based upon his or her having been convicted of one or more criminal offenses, when such

9

> denial is in violation of the provisions of article twenty-three-A of
> the correction law…

65.   Defendant SAMEDAY and Defendant MAERLY violated the sections cited herein as set

forth.

### Second Cause of Action for Discrimination
### Under the New York Correction Law

66.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

67.   New York Correction Law § 752 provides:

> Unfair discrimination against persons previously convicted of one
> or more criminal offenses prohibited.  No application for any license
> or employment, and no employment or license held by an individual,
> to which the provisions of this article are applicable, shall be denied
> or acted upon adversely by reason of the individual's having been
> previously convicted of one or more criminal offenses, or by reason
> of a finding of lack of "good moral character" when such finding is
> based upon the fact that the individual has previously been convicted
> of one or more criminal convictions, unless: (1) there is a direct
> relationship between one or more of the previous criminal offenses
> and the specific license or employment sought or held by the
> individual; or (2) the issuance or continuation of the license or the
> granting or continuation of the employment would involve an
> unreasonable risk to property or to the safety or welfare of specific
> individuals or the general public.

68.   Defendant SAMEDAY and Defendant MAERLY violated the sections cited herein as set

forth.

### Jury Demand

69.   Plaintiff hereby demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests a judgment against Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited

by the New York State Human Rights Law, New York State Executive Law §§

296, *et. seq.*, Article 23-A of the New York Correction Law §§ 750 – 755 in that Defendants discriminated against and failed to hire Plaintiff solely on the basis of Plaintiff's prior criminal conviction;

B.     Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful employment practices and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C.     Awarding Plaintiff compensatory damages for mental and emotional distress, pain and suffering and injury to reputation;

D.     Awarding Plaintiff punitive damages;

E.     Awarding Plaintiff prejudgment interest;

F.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.     Awarding Plaintiff such other further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated:  New York, New York
        December 8, 2022

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By:     _____
        Stefanie Shmil
        *Attorneys for Plaintiff*
        45 Broadway, Suite 430
        New York, New York 10006
        (212) 248-7431
        sshmil@tpglaws.com

11